ORIGINAL

1 | ROBBINS GELLER RUDMAN
   & DOWD LLP
2 | JOHN J. STOIA, JR. (141757)
   RACHEL L. JENSEN (211456)
3 | PHONG L. TRAN (204961)
   655 West Broadway, Suite 1900
4 | San Diego, CA 92101
   Telephone: 619/231-1058
5 | 619/231-7423 (fax)
   jstoia@rgrdlaw.com
6 | rjensen@rgrdlaw.com
   ptran@rgrdlaw.com
7 | – and –
   SAMUEL H. RUDMAN
8 | MARK S. REICH
   58 South Service Road, Suite 200
9 | Melville, NY 11747
   Telephone: 631/367-7100
10 | 631/367-1173 (fax)
   srudman@rgrdlaw.com
11 | mreich@rgrdlaw.com

12 | Attorneys for Plaintiff

13 | [Additional counsel appear on signature page.]

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA

16 | SAN FRANCISCO DIVISION

**EDL**

17 | FARIS MATIN, Individually and on Behalf of )  **VIA FAX**
   | All Others Similarly Situated,            )
18 |                                            )  **C   12      6465**
   |                           Plaintiff,       )
19 |                                            )  CLASS ACTION
   |         vs.                                )
20 |                                            )  COMPLAINT FOR BREACH OF
   | NESTLE PURINA PETCARE COMPANY,             )  WARRANTY, NEGLIGENCE, STRICT
21 | WAGGIN' TRAIN LLC, PETSMART, INC.          )  LIABILITY, VIOLATIONS OF CAL. BUS.
   | and DOES 1-50, Inclusive,                  )  & PROF. CODE §§17200 AND 17500, CAL.
22 |                                            )  CIVIL CODE §1750, *ET SEQ.*, CAL. CIVIL
   |                           Defendants.      )  CODE §1792.1, *ET SEQ.*, AND UNJUST
23 |                                            )  ENRICHMENT

24 |                                               DEMAND FOR JURY TRIAL

25 |

26 |

27 |

28 |

1    Plaintiff Faris Matin ("Plaintiff"), by his attorneys, bring this class action against defendants

2  Nestle Purina PetCare Company ("Nestle Purina"), Waggin' Train LLC ("Waggin' Train"), and

3  PetSmart, Inc. ("PetSmart") (collectively "Defendants"), on his own behalf and on behalf of a class

4  of all others similarly situated, including all persons who purchased and/or acquired dog jerky treats

5  manufactured and sold by Defendants Waggin' Train and Nestle Purina, either under the Waggin'

6  Train brand or the Canyon Creek Ranch brand, and which contain duck or chicken imported from

7  China (hereinafter "Jerky Treats"). Plaintiff brings this action for compensatory damages and

8  equitable, injunctive and declaratory relief against Defendants, who designed, manufactured,

9  marketed, sold and/or distributed Jerky Treats. Plaintiff alleges the following upon his own

10  knowledge, or where there is no personal knowledge, upon information and belief and the

11  investigation of his counsel.

12                                    **NATURE OF THE ACTION**

13    1.    Since at least 2007, the Food and Drug Administration ("FDA") has received

14  thousands of reports of dogs that have died or become seriously sick after eating duck or chicken

15  jerky treats manufactured in China. Many of the incidences of dog death or illness have been tied to

16  the consumption of Jerky Treats manufactured in China for distribution and sale by Defendants by

17  Waggin' Train and Nestle Purina, including those sold under the Canyon Creek Ranch brand.

18    2.    Plaintiff Matin was one of the many pet owners who suffered the loss of a pet after it

19  consumed Defendants' Chinese-made Jerky Treats. After purchasing Defendants' "Canyon Creek

20  Ranch Natural Duck Tenders" Jerky Treats from PetSmart, Plaintiff Matin fed the Jerky Treats to

21  "BuBu," his otherwise healthy, two-year old Yorkshire Terrier. BuBu became sick and started

22  suffering from diarrhea soon after eating the treats.

23    3.    BuBu's condition quickly worsened over the next few days. In addition to suffering

24  from diarrhea, BuBu began vomiting, could not eat, and was extremely lethargic. On the fifth day

25  after eating Defendants' Jerky Treats, BuBu died.

26    4.    As discussed below, thousands of other pet owners across the country have reported

27  similar incidences of dog sickness or death after feeding Defendants' Jerky Treats to their pets. Pet

28  owners have reported that their dogs, after eating duck or chicken Jerky Treats, suffered

1 gastrointestinal distress, frequently followed by severe kidney impairment, leading to kidney failure
2 and eventually death.

3      5.      In response to the multitude of reports of dogs becoming sick or dying after eating
4 Chinese-made dog jerky treats, the FDA issued no less than four warnings to consumers about the
5 hazards and dangers associated with such treats. The FDA has advised consumers to watch for
6 certain symptoms in dogs that have eaten jerky treats, including: "decreased appetite; decreased
7 activity; vomiting; and diarrhea." Additionally, the FDA has specifically warned that many of the
8 reported incidences of dog illness or death have been tied to Jerky Treats manufactured and sold by
9 Waggin' Train and Nestle Purina, including those sold under the Canyon Creek Ranch brand.

10      6.      Defendants continue to market, sell and distribute Chinese-made Jerky Treats to
11 consumers, despite the multiple FDA warnings and despite the many documented incidences of dogs
12 dying and becoming sick from such treats.

13      7.      Defendants have failed to take the necessary precautionary measures to prevent
14 hazardous and dangerous substances from being used in Jerky Treats. Defendants marketed and sold
15 the Jerky Treats without first determining that the products are safe and suitable for canine
16 consumption and that the Jerky Treats would not cause dogs to become sick or die.

17      8.      Defendants also failed to provide any warning or cautionary language on the
18 packaging of Jerky Treats concerning the dangers and risks of feeding the treats to dogs.

19      9.      In fact, not only did Defendants fail to provide any meaningful warnings concerning
20 the dangerous and deleterious nature of Jerky Treats, Defendants specifically marketed and
21 promoted the Jerky Treats as being *"natural," "genuine," "wholesome," "healthy," "the highest*
22 *quality,"* and made from *"only the most simple and pure ingredients."* These and other
23 representations made by Defendants concerning the quality, suitability and wholesomeness of Jerky
24 Treats were patently false and misleading and concealed the hazardous and harmful nature of such
25 treats.

26      10.     Defendants also failed to adequately monitor the manufacturing of Jerky Treats in
27 China and allowed them to be sold in the United States, thereby posing extreme dangers to the pets
28 that consumed the treats.

1      11.    Despite Defendants' knowledge of the hazardous, unsafe nature of Jerky Treats,

2  Defendants continued to manufacture, market, sell and/or distribute Jerky Treats without proper

3  manufacturing quality control measures, safety inspections and warnings.

4      12.    As a result of Defendants' misconduct, Plaintiff and the Class have been injured

5  because their pets have been exposed to hazardous and dangerous treats that pose serious health risks

6  to dogs, including severe illness, kidney failure and death.

7                    **INTRADISTRICT ASSIGNMENT**

8      13.    A substantial part of the events or omissions which give rise to the claims in this

9  action occurred in the county of San Francisco, and as such this action is properly assigned to the

10  San Francisco division of this Court.

11                    **JURISDICTION AND VENUE**

12      14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

13  §1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy

14  exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of

15  the class are citizens of different states than the Defendants. *See* 28 U.S.C. §1332(d)(2)(A).

16      15.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts

17  and transactions giving rise to this action occurred in this District and because Defendants: (a) are

18  authorized to conduct business in this District and have intentionally availed themselves of the laws

19  and markets within this District through the promotion, marketing, distribution and sale of the Jerky

20  Treats in this District; (b) conducted substantial business in this District; and (c) are subject to

21  personal jurisdiction in this District.

22                           **PARTIES**

23      16.    Plaintiff Faris Matin is a citizen of the State of California and resides in this District.

24  In or around December 2010, Plaintiff Matin purchased a package of "Canyon Creek Ranch Natural

25  Duck Tenders" Jerky Treats for his dog BuBu from a PetSmart store in Santee, California. Matin

26  purchased the Jerky Treats because he saw and relied upon Defendants' representations and

27  omissions that the treats were safe and appropriate for in consumption by his dog.

28

1      17.    Defendant Nestle Purina is a Missouri corporation, with its principal place of business

2 at Checkerboard Square, St. Louis, Missouri. Nestle Purina is engaged in the business of

3 manufacturing, producing, marketing, distributing and selling pet products, including dog food and

4 treats, including in California.

5      18.    Defendant Waggin' Train is a limited liability company chartered under Delaware

6 law, with its principal place of business at 1924 Pearman Dairy Road, #A, Anderson, South

7 Carolina. Waggin' Train is a wholly-owned subsidiary of Nestle Purina and at all relevant times

8 acted under the direction and control of Nestle Purina. Waggin' Train manufactures, imports,

9 distributes and sells dog food and treats, including the Jerky Treats at issue, which are sold under the

10 "Waggin' Train" brand name or the "Canyon Creek Ranch" brand name, including in California.

11      19.    Defendant PetSmart is a Delaware corporation, with its principal place of business at

12 19601 North 27th Avenue, Phoenix, Arizona. PetSmart is one of the largest specialty retailers of pet

13 products and services in the country. At all relevant times, PetSmart marketed, distributed and sold

14 the Jerky Treats manufactured by Waggin' Train and Nestle Purina, including in California.

15      20.    Does 1-50 are other entities involved in the manufacture, marketing, distribution and

16 sale of Jerky Treats. The identities of Doe Defendants 1-50 are currently unknown, but may be

17 discovered upon further investigation and discovery.

18                              **FACTUAL ALLEGATIONS**

19 **Defendants Manufactured and Sold Toxic Jerky Treats**

20      21.    Waggin' Train, under the control and direction of Nestle Purina, is a leading

21 manufacturer of duck and chicken jerky dog treats sold either under the "Waggin' Train" or "Canyon

22 Creek Ranch" brand names. Waggin' Train markets, sells and distributes Jerky Treats nationwide

23 through specialty pet retailers such as PetSmart, as well as large retail chains such Target, Costco,

24 Wal-Mart and Walgreens, including in California.

25      22.    Waggin' Train holds itself out to the public as a manufacturer of safe, high-quality

26 and nutritious pet food and treats. On its website, Waggin' Train represents that its products are

27 wholesome, natural and high quality:

28

1    The idea for Waggin' Train® treats was cooked up in a kitchen probably not
     too different from your own. We love to spoil our pets, but got fed up with treats
2    packed with ingredients nature never intended dogs to eat. We searched stores for
     wholesome treats, but never found any that met our standards. So we decided to
3    make our own. Our dogs went nuts for them and we knew others would too.[1]

4    23.    Waggin' Train also states on its website that its products are "made with chicken or

5    duck as the #1 ingredient" and "are produced, packaged and inspected in accordance with high

6    sanitation and safety standards."[2]

7    24.    At all relevant times, Waggin' Train and Nestle Purina actively marketed, advertised

8    and promoted the duck and chicken Jerky Treats as being high-quality, wholesome, safe, and natural.

9    The packaging for Canyon Creek Ranch "Natural Duck Tenders," the treats which Plaintiff Matin

10   purchased and fed his dog, stated, among other things, that:

11        (a)    the treats were "NATURAL" and "GENUINE";

12        (b)    the treats were "wholesome" and "healthy";

13        (c)    the treats were made using "only the most simple and pure ingredients";

14        (d)    the treats were made with "Duck Breast, Vegetable Glycerin, Natural flavors";

15        (e)    "You'll never find any harsh preservatives or artificial flavors" in the treats;

16   and

17        (f)    "Just like you we love our dogs and want what's best for them."

18   25.    Similarly, the packaging for Waggin' Train's "wholesome Chicken Jerky Tenders"

19   Jerky Treats stated, among other things, that:

20        (a)    the treats were "wholesome chicken" and a "wholesome treat";

21        (b)    the ingredients of the treats "are of the highest quality" and were "nothing but

22   the best";

23        (c)    "[i]t's what nature intended";

24        (d)    "[w]e looked everywhere to find a treat that was better for our dogs";

25   _____

26   [1]   http://waggintrainbrand.com/about.html

27   [2]   http://waggintrainbrand.com/products.html

28

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS
OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.*                    - 5 -

1          (e)     the treats were "[j]ust wholesome goodness";

2          (f)     the purchaser should "[f]eel confident that you are giving your dog a

3  wholesome treat that is both healthy and delicious"; and

4          (g)     "[i]t means a lot to us to help you treat your dog right."

5       26.     Contrary to Defendants' assertions, Jerky Treats are not the wholesome, natural,

6  healthy and high quality dog treats represented. Jerky Treats are in fact unhealthy, unsafe and unfit

7  for consumption, as they cause severe sickness and/or death in dogs.

8       27.     Defendants' Jerky Treats, both the duck and chicken variety, are manufactured in

9  China and/or made with ingredients sourced from China. Since at least 2007, the FDA has received

10  thousands of consumer reports of dogs dying or becoming seriously ill after consuming Chinese-

11  made jerky treats. Many of these incidences of dog death and illness have been tied to Jerky Treats

12  manufactured by Defendants Waggin' Train and Nestle Purina, including those sold under the

13  Canyon Creek Ranch brand.

14       28.     Reports by pet owners who have suffered the death or sickness of a pet after being fed

15  Chinese-made jerky treats are strikingly uniform. Pet owners have reported that their dogs, after

16  eating duck or chicken jerky treats, suffered severe gastrointestinal distress, including vomiting or

17  diarrhea, sometimes with blood or mucus. These symptoms were frequently followed by severe

18  kidney impairment, leading to kidney failure and eventually the death of the dog.

19  **Plaintiff Matin Suffered the Loss of His Dog After It Ate Defendants' Jerky Treats**

20       29.     Plaintiff Matin was one of the many pet owners who lost a pet after it ate Defendants'

21  Jerky Treats. In or around December 2010, Plaintiff Matin purchased a package of "Canyon Creek

22  Ranch Natural Duck Tenders" Jerky Treats made in China from a PetSmart store in Santee,

23  California.

24       30.     At that time, Plaintiff Matin owned a two-year old Yorkshire Terrier named BuBu.

25  Bubu weighed between four to five pounds and had no health issues at the time.

26       31.     The day after he purchased the product, Mr. Matin gave BuBu half a piece of the

27  Canyon Creek Ranch Jerky Treat. Mr. Matin made no other changes to BuBu's diet. Immediately

28  after being fed the Jerky Treat, BuBu began suffering from diarrhea.

32.     The next day, Plaintiff Matin gave BuBu another half piece of the Jerky Treat, not realizing the deleterious nature of the treat.  BuBu's diarrhea continued.

33.     The following day, BuBu's conditioned worsened and in addition to diarrhea, BuBu was unable to hold down food or water, began vomiting, and exhibited extreme lethargy.  Plaintiff Matin was still unaware of the reasons for his dog's distress.

34.     The next morning, Plaintiff Matin took BuBu to the veterinarian.  BuBu's conditioned worsened still, and his diarrhea now included signs of blood.  The veterinarian monitored and attempted to treat BuBu for two days, but was unable to help BuBu or alleviate his pain.

35.     BuBu died two days later – a mere five days after first eating the Canyon Creek Ranch Jerky Treats.

**Pet Owners Around the Country Have Reported Their Dogs Dying or Becoming Seriously Ill After Eating Defendants' Jerky Treats**

36.     There are many other similar reports of dogs becoming sick or dying after consuming Waggin' Train or Canyon Creek Ranch brand Jerky Treats.  As reported on the website www.benny-the-yorkie.com, a pet owner purchased "Canyon Creek Ranch Brand Wholesome Chicken Breast Tenders" Jerky Treats from a PetSmart store and fed the treats to "Benny," a Labrador Retriever, and "Buddy," a Yorkshire Terrier.[3]

37.     Both dogs became sick from eating the Jerky Treats.  Buddy suffered a severe case of diarrhea that needed to be treated with medication, while Benny became very depressed and sluggish and later stopped eating altogether.

38.     After being hospitalized, Benny suffered acute kidney failure and died two weeks after eating the Jerky Treats.

39.     According to the pet owner, neither Benny nor Buddy had health problems until after consuming Defendants' Jerky Treats:

> I am here to tell you that I had 2 dogs that were very healthy and never had any health problems until they consumed Canyon Creek Ranch Brand *Wholesome* Chicken Breast Tenders Snack.  That was the only "change" in their diet, period.  I

---

[3]     http://www.benny-the-yorkie.com/2012/01/canyon-creek-ranch-brand-waggin-train/ (last visited Dec. 20, 2012).

am also here to tell you that my 6 year old Yorkie died 2 weeks after consuming Canyon Creek Ranch Brand *Wholesome* Chicken Breast Tenders Snack.

40.    Similarly, *Dogs Naturally* magazine published on its website dozens of emails from pet owners with dogs that died or became sick after eating Waggin' Train or Canyon Creek Ranch Jerky Treats.[4] A few of theses reports are excerpted below.

41.    A pet owner with a dog named "Floyd" reported:

He began eating the treats in mid November 2011, was very lethargic, dehydrated, throwing up, crying in pain, couldn't walk or stand anymore by mid February, drinking INSANE amounts of water and then going outside to urinate for about 2 minutes straight, umm, he was very shaky, his tongue had turned bright read [sic] and there was a horrible odor coming out of his mouth. The normal vet tested his blood and said he was dying of kidney failure and there was nothing they could do. Regardless I was referred to another hospital, I drove my dog 300 and some miles and $3500 later they said he was dying and there was nothing they could do. She asked me what he got into because it's not normal. I had him euthanized the next day 2/24/2012.

42.    The owner of "Mariah" reported:

My baby girl died from Canyon Creek Ranch Treats. I gave her that first deadly treat November 3rd 2011 she passed away November 18th 2011. These treats also sickened my 4 yrs old but she has recovered. RIP my baby girl . . . .

43.    The owner of "Belle" reported:

Belle . . . . Died after a 4 week battle from Waggin Train Chicken Jerky poisoning. She fought to survive, but seizures did too much damage. Her liver had been enlarged, her pancreas infected, and her immune system was shutting down. After intensive care, she was eating again, and drinking, all bodily functions were returning to normal, then she had first seizure, and went down hill from there in Neurological functions. We put her to sleep day before yesterday.

44.    The owner of "Cupcake" and "Ginger" reported:

Our beloved babies, Cupcake and Ginger, are now angels. Cupcake was only 5 years old and Ginger was 12. Both of them were as happy and healthy as they were as puppies. They both suffered for months and finally died after being fed Waggin' Train Chicken Jerky treats.

45.    The owner of "Taffy" reported:

I purchased a bag of Waggin Train Jerky Tenders from Sam's club . . . . My dog is fighting for her life. She began vomiting and foaming at the mouth 30 minutes after eating the treat. 24 hours later her temperature was 105 F and she has been fighting for her life for the past 5 days. He [sic] white blood cell count dropped

---

[4]    http://www.dogsnaturallymagazine.com/waggin-train-victims/ (last visited Dec. 20, 2012).

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.*                - 8 -

1    to 1000. She has been on IV's ever since. She is not eating or drinking and can
     barely walk.

2

**The FDA Has Issued Multiple Warnings of the Dangers**
3    **and Hazards Associated with Defendants' Jerky Treats**

4        46.    Since at least 2007, the FDA has been bombarded by thousands of reports from

5    concerned pet owners all over the country who have suffered the loss or sickness of their pets after

6    consumption of Chinese-made duck and chicken treats, including the Jerky Treats marketed and sold

7    by Defendants Waggin' Train and Nestle Purina. Spurred by these complaints, the FDA began

8    investigating canine jerky products and issued multiple warnings to consumers.

9        47.    On September 26, 2007, the FDA issued its first warning and cautioned consumers of

10   the "potential association between development of illness in dogs and the consumption of chicken

11   jerky products."[5] The FDA noted that it had received information from Banfield, the pet hospital

12   chain, suggesting "an association between exposure to the chicken jerky products and signs of

13   gastrointestinal illness (vomiting, diarrhea and bloody diarrhea)." The FDA further noted:

14           Dogs that have become ill, typically show the following signs: decreased food
             consumption, although some may continue to consume the treats to the exclusion of
15           other foods; decreased activity or lethargy; vomiting; diarrhea, sometimes with
             blood; and increased water consumption and/or increased urination. Some or all of
16           these signs may be present in any individual. Blood tests may indicate kidney failure
             (increased urea nitrogen and creatinine). Urine tests may indicate Fanconi syndrome
17           (increased glucose). Although most dogs appear to recover, some reports to the FDA
             have involved dogs that have died.
18

19       48.    On November 18, 2011, the FDA issued another warning, this time specifically

20   cautioning consumers of the significant increase in dog deaths and illnesses associated with the

21   consumption of chicken jerky products made in China. The FDA noted that "[i]n the last 12 months,

22   FDA has seen an increase in the number of complaints it received of dog illnesses" and "some

23   reports to the FDA have involved dogs that have died."[6] The FDA advised consumers to watch for

24   certain symptoms in dogs that consumed chicken jerky treats, including: "decreased appetite;

25   ——————————
     [5]   *FDA Cautions Consumers about Chicken Jerky Products for Dogs*, http://www.fda.gov/
26   AnimalVeterinary/NewsEvents/CVMUpdates/ucm048029.htm (last visited Dec. 20, 2012).

27   [6]   *FDA Continues to Caution Dog Owners About Chicken Jerky Products*, http://www.fda.gov/
     AnimalVeterinary/NewsEvents/CVMUpdates/ucm280586.htm (last visited Dec. 20, 2012).

28

1  decreased activity; vomiting; and diarrhea." The FDA further noted that it was continuing to
2  "actively investigate the problem and its origin."

3      49.    The FDA issued an updated report on August 15, 2012.[7] The FDA reported that pet
4  illness complaints had expanded to other jerky pet products including duck and jerky treats, and as a
5  result, its investigation "now includes these types of jerky treat products."

6      50.    The FDA also issued a list of over 200 product complaints received by the FDA's
7  District Consumer Complaint Coordinators between January 1, 2007 and July 2, 2012.[8] Many of
8  these complaints identify Jerky Treats sold under the Waggin' Train and Canyon Creek Ranch
9  brands as the treats that were consumed by dogs leading to their illness or death.

10      51.    In the August 15, 2012 update, the FDA disclosed that investigation into the cause for
11  the pet illnesses and deaths was ongoing, and "samples from recent cases (2011-2012) have been
12  submitted for multiple tests and . . . . More samples are in the process of being collected for testing."

13      52.    The FDA has attempted to conduct onsite testing and investigate the Chinese plants
14  that manufacture canine jerky products, but the agency has received stiff opposition from Chinese
15  officials.

16      53.    On August 22, 2012, NBC News reported that FDA investigators "came away empty-
17  handed after conducting April inspections at four jerky treat manufacturing sites in [China]," as
18  "Chinese government officials overseeing plants that make chicken jerky pet treats blamed for
19  thousands of illnesses and deaths among American dogs have refused to allow U.S. inspectors to
20  collect samples for independent analysis."[9] According to the news report, FDA officials in China
21  were told that they "could collect samples only if they agreed to specific conditions, including a

22

23  [7]  *Questions and Answers Regarding Jerky Pet Treats*, http://www.fda.gov/AnimalVeterinary/
    SafetyHealth/ProductSafetyInformation/ucm295445.htmhttp://www.fda.gov/AnimalVeterinary/News
24      ents/CVMUpdates/ucm280586.htm (last visited Dec. 20, 2012).

25  [8]  http://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofGlobalRegulatoryOperations
    andPolicy/ORA/ORAElectronicReadingRoom/UCM314415.pdf

26  [9]  *China stiff-arms FDA on jerky pet treat testing, reports show*,
27      http://vitals.nbcnews.com/_news/2012/08/22/13399443-china-stiff-arms-fda-on-jerky-pet-treat-
    testing-reports-show?lite (last visited Dec. 20, 2012).

28

1  requirement that the samples be tested in Chinese-run laboratories." As a result, "'no samples were
2  collected during this inspection.'" The news report further provides that "reports showed that the
3  Chinese plants conducted either no laboratory tests or only sporadic tests of the raw materials,
4  including meat used in treats fed to many of the 78.2 million pet dogs in the U.S."

5      54.    On September 14, 2012, the FDA issued another updated report, stating that to date it
6  has received approximately 2,200 reports of pet illnesses which may be related to consumption of
7  jerky treats imported from China, including chicken, duck, and sweet potato jerky treats, and treats
8  where chicken or duck jerky is wrapped around dried fruits, sweet potatoes, or yams.[10]

9      55.    The FDA also provided an update on its investigation into Chinese manufacturing
10  plants, noting that "[a]fter increased complaints began in 2011, the FDA conducted five plant
11  inspections in China during March and April 2012." The FDA identified concerns about the record
12  keeping practices of several of the inspected firms, stating that "one firm falsified receiving
13  documents for glycerin, which is an ingredient in most jerky pet treats." As a result, the Chinese
14  authority, the Administration of Quality Supervision, Inspection and Quarantine "informed the FDA
15  that it seized products at that firm and suspended exports of its products until corrective actions were
16  taken by the firm."

17      56.    The FDA's investigation into jerky treats imported from China is currently ongoing,
18  and in its September 14, 2012 report, the FDA noted that it has "reached out to U.S. pet food firms to
19  enlist their help in this public health investigation and is seeking further collaboration on scientific
20  issues and data sharing." As part of its ongoing efforts, the FDA is "expanding its testing to include
21  irradiation byproducts and is consulting with the National Aeronautics and Space Administration
22  (NASA) experts to discuss this possibility further."

23
24
25
26

27  [10]  *FDA Investigates Animal Illness Linked to Jerky Pet Treats*,
    http://www.fda.gov/AnimalVeterinary/SafetyHealth/ProductSafetyInformation/ucm319463.htm (last
28  visited Dec. 20, 2012).

**Defendants Knew of the Dangers and Hazards of Jerky Treats, but Failed to Ensure that the Jerky Treats Were Safe and Suitable for Canine Consumption**

57. Despite the many documented cases of dogs becoming sick or dying from eating Jerky Treats and despite multiple warnings from the FDA, Defendants Waggin' Train and Nestle Purina continue to market, sell and distribute in the United States these Jerky Treats manufactured in China.

58. Defendants knew there was a substantial risk of death or harm to dogs from the consumption of Jerky Treats.

59. Defendants marketed and sold the Jerky Treats without first determining that the products are safe and suitable for canine consumption and that the Jerky Treats would not cause dogs to become sick or die.

60. Waggin' Train and Nestle Purina did not provide any warning or cautionary language on the packaging of Jerky Treats regarding the dangers or risks of feeding dogs the treats made in China or made from ingredients sourced in China. Quite the contrary, Waggin' Train and Nestle Purina specifically marketed and promoted the Jerky Treats as being "*natural*," "*genuine*," "*wholesome*," and "*healthy*." Defendants further represented that the Jerky Treats are "*of the highest quality*," "*nothing but the best*," and made from "*only simple and pure ingredients*." These and other representations made by Defendants concerning the quality, suitability and wholesomeness of the Jerky Treats were seen and relied upon by Plaintiff and by consumers all over the country who purchased the treats and fed them to their pets. Contrary to Defendants' representations, however, Defendants' Jerky Treats were unsafe and unfit for canine consumption.

61. The fact that the Jerky Treats might cause serious illness or death in dogs was and is a material fact to pet owners and Plaintiff and other Class members would not have purchased the products had they known of the dangerous defects therein. Defendants intentionally concealed known facts concerning the safety of Jerky Treats in order to increase or maintain sales.

62. Retailers like Defendant PetSmart adopted the marketing representations of Defendants Waggin' Train and Purina. PetSmart did not provide any warnings about the Jerky Treats at the point of sale or otherwise. Nor did PetSmart take the action necessary and sufficient to ensure that the Jerky Treats were safe for consumption.

1    63.    Defendants further failed to adequately monitor the manufacturing of Jerky Treats in

2 China and allowed them to be sold in the United States, thereby posing extreme dangers to the pets

3 that consumed the treats.

4    64.    Additionally, Defendants failed to adequately monitor and inspect the safety of the

5 Jerky Treats when they were imported from China to the United States, thereby allowing such

6 products to enter the stream of commerce and ultimately be consumed by pets all over the country.

7    65.    Despite Defendants' knowledge of the hazardous, unsafe nature of the Jerky Treats,

8 Defendants continued to manufacture, market, sell and/or distribute the Jerky Treats without proper

9 manufacturing quality control measures, safety inspections and warnings.

10    66.    As a result of Defendants' misconduct, Plaintiff and the Class have been injured

11 because their pets have been exposed to hazardous and dangerous treats that pose serious health

12 risks, including sickness and death.

13                              **CLASS ALLEGATIONS**

14    67.    Plaintiff brings this action on behalf of himself and all those similarly situated

15 pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

16    68.    Plaintiff seeks certification of the following Class:

17       All persons in the United States who purchased and/or acquired dog treat products
         manufactured and sold by Waggin' Train and Nestle Purina, either under the
18       Waggin' Train brand or the Canyon Creek Ranch brand, containing duck or chicken
         imported from China.
19
         Specifically excluded from the Class are Defendants' officers, directors or
20       employees, any entity in which any Defendant has a controlling interest and any of
         Defendants' affiliates, legal representatives, heirs, or assigns. Plaintiff reserves the
21       right to amend the Class definition if discovery and further investigation reveal that
         the Class should be expanded or otherwise modified.
22
      69.    The Class comprises hundreds of thousands of consumers throughout California and
23
   the United States.    The Class is so numerous that joinder of all members of the Class is
24
   impracticable.
25
      70.    *Existence and Predominance of Common Questions of Law and Fact.* Common
26
   questions of law and fact exist as to all members of the Class and predominate over any questions
27

28

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS
OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.*                    - 13 -

affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether the Jerky Treats manufactured and/or sold by Defendants were materially defective;

(b)     whether the Jerky Treats were contaminated or otherwise unfit for consumption by dogs;

(c)     whether Defendants negligently manufactured, distributed, marketed, tested and/or sold Jerky Treats;

(d)     whether Defendants concealed or omitted material information concerning the safety of Jerky Treats;

(e)     whether Defendants failed to properly monitor and test Jerky Treats;

(f)     whether Defendants failed to warn of the dangers of Jerky Treats;

(g)     whether Defendants engaged in deceptive and unfair business and trade practices;

(h)     whether Defendants breached express and implied warranties;

(i)     whether the Class has been injured by virtue of Defendants' misconduct;

(j)     whether Plaintiff and Class members are entitled to declaratory, injunctive and/or equitable relief; and

(k)     whether Plaintiff and Class members are entitled to damages, including actual, statutory and punitive damages plus interest thereon, and if so, what is the nature of such relief.

71.     *Typicality.*  Plaintiff's claims are typical of the claims of the Class he seeks to represent, in that the named Plaintiff and all members of the proposed Class purchased Jerky Treats in a typical retail process. The claims of the named Plaintiff and the all Class members are based on the same factual and legal theories.

72.     *Adequacy of Representation.*  Plaintiff will fairly and adequately protect the interests of the members of the Class because it is in his best interest to prosecute the claims alleged herein to obtain full compensation due to him for the unreasonable and unlawful conduct of which he complains. Plaintiff has retained highly competent counsel and experienced class action attorneys to

1  represent his interests and those of the Class. Plaintiff and his counsel have the necessary financial
2  resources to adequately and vigorously litigate this class action. Plaintiff has no adverse or
3  antagonistic interests to those of the Class. Plaintiff is willing and prepared to serve the Court and
4  the Class members in a representative capacity with all of the obligations and duties material thereto
5  and is determined to diligently discharge those duties by vigorously seeking the maximum possible
6  recovery for Class members.

7  73.  **Superiority.** A class action is superior to other available means for the fair and
8  efficient adjudication of this controversy since individual joinder of all Class members is
9  impracticable. Class action treatment will permit a large number of similarly situated persons to
10 prosecute their common claims in a single forum simultaneously, efficiently and without the
11 unnecessary duplication of effort and expense that numerous actions would engender. Furthermore,
12 the expenses and burden of individual litigants and the lack of knowledge of Class members
13 regarding Defendants' activities, would make it difficult or impossible for individual Class members
14 to redress the wrongs done to them, while an important public interest will be served by addressing
15 the matter as a class action. The cost to the court system of adjudication of such individualized
16 litigation would be substantial. The trial and litigation of Plaintiff's claims will be manageable.

17 74.  Defendants have acted or refused to act on grounds generally applicable to the Class,
18 thereby making appropriate final injunctive relief.

19 75.  Plaintiff avers that the prerequisites for class action treatment apply to this action and
20 that questions of law or fact common to the Class predominate over any questions affecting only
21 individual members and that class action treatment is superior to other available methods for the fair
22 and efficient adjudication of the controversy which is the subject of this action. Plaintiff further
23 states that the interests of judicial economy will be served by concentrating litigation concerning
24 these claims in this Court, and that the management of this Class will not be difficult.

25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT I

### Breach of Express Warranty, Cal. Com. Code §2313
### Against All Defendants

76.     Plaintiff repeats and alleges each and every allegation contained above as if fully set forth herein.

77.     The Uniform Commercial Code §2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

78.     California has codified and adopted the provision of the Uniform Commercial Code governing the express warranty of merchantability, pursuant to Cal. Com. Code §2313.

79.     As detailed above, Defendants manufactured, marketed and sold Jerky Treats and represented on the packaging of Jerky Treats that they were safe, healthy and fit for consumption by dogs.

80.     Defendants' Jerky Treats did not conform to these express representations because Jerky Treats were not safe and not fit for consumption by dogs, as they contained contaminants, ingredients or substances that cause sickness or death in dogs.

81.     Defendants breached their express warranties in connection with the manufacturing, sale and distribution of Jerky Treats to Plaintiff and other members of the Class because they were not fit for canine consumption.

82.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and other members of the Class have sustained injuries, including, but not limited to: the purchase price of Jerky Treats; the loss or sickness of their pets; increased risk of health problems in their pets, including exposure to contaminants, ingredients or substances that cause illness or death in dogs; the costs of diagnostic screening, testing and veterinarian treatment; and other economic losses.

83.     All conditions precedent to Defendants' liability under this express contract, including notice, as described above, have been performed by Plaintiff and the Class.

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS
OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.*     - 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### Breach of Implied Warranty, Cal. Com. Code §2314
### Against All Defendants

84.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

86.     California has codified and adopted the provision of the Uniform Commercial Code governing the express warranty of merchantability, pursuant to Cal. Com. Code §2314.

87.     As manufacturers, producers, distributors, marketers and/or sellers of duck and chicken Jerky Treats, Defendants are "merchants" within the meaning of California Commercial Code §2314 governing the implied warranty of merchantability.

88.     Dog treats, such as the Jerky Treats manufactured and sold by Defendants, are "goods" within the meaning of California Commercial Code §2314.

89.     Defendants, as the manufacturers, producers, distributors, marketers and/or sellers of Jerky Treats, represented that Jerky Treats were safe, healthy, wholesome, and high quality, and impliedly warranted that Jerky Treats were fit for their intended and ordinary purposes in that they were safe for canine consumption.

90.     Contrary to such representations and in breach of the warranty implied for the sale of dog jerky treats, the Jerky Treats were not safe, healthy, wholesome or fit for consumption, and in fact contained contaminants or harmful substances that caused illness or death in dogs. As a result, Plaintiff and members of the Class did not receive the goods as impliedly warranted by Defendants to be merchantable.

91.     At the time that Defendants designed, manufactured, sold and/or distributed the dog treats, Defendants knew the purpose for which the Jerky Treats were intended and that they would be consumed by dogs.

1    92.    Defendants also knew that consumers relied upon them to produce, manufacture and

2  sell dog treat products that were reasonably safe and would not endanger their pets' health.

3    93.    As a direct and proximate cause of Defendants' breach of the implied warranty,

4  Plaintiff and members of the Class have sustained injuries, including, but not limited to: the purchase

5  price of Jerky Treats; the loss or sickness of their pets; increased risk of health problems in their pets,

6  including exposure to contaminants, ingredients or substances that cause illness or death in dogs; the

7  costs of diagnostic screening, testing and veterinarian treatment; and other economic losses.

8    94.    Plaintiffs have given notice to Defendant of this breach by virtue of the filing of a

9  lawsuit, which demands have been ignored or rejected.

10    95.    Defendant's breach of the warranty described above also constitutes a violation of

11  California Civil Code §1792, *et seq.*

12                                **COUNT III**

13                **Negligence – Design, Manufacturing Defect and Failure to Warn**
                                **Against All Defendants**

14

15    96.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

   forth herein.

16
    97.    Defendants designed, manufactured, sold, and/or distributed Jerky Treats, which were

17  intended for canine consumption.

18
    98.    Defendants owed Plaintiff and other consumers like him a reasonable duty of care in

19  the design, manufacture, sale and/or distribution of Jerky Treats that were free of any ingredient,

20  contaminant, or substance causing sickness or harm to dogs.

21
    99.    Defendants had a duty to exercise reasonable care in the design, manufacture, sale

22  and/or distribution of Jerky Treats, including a duty to ensure that Jerky Treats were free of any

23  contaminant, ingredient or substance causing sickness or harm to dogs.

24
    100.    Defendants failed to exercise reasonable care in the design, manufacture, sale, and/or

25  distribution of Jerky Treats and were negligent in that they:

26

27

28

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS
OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.*        - 18 -

1           (a)     Failed to use reasonable care in designing and manufacturing the Jerky Treats,

2 so as to avoid exposing dogs to harmful ingredients, contaminants, or substances causing sickness or

3 death;

4           (b)     Failed to conduct adequate quality control and testing of the Jerky Treats in

5 China and upon the Jerky Treats' arrival in the United States to determine the safety and suitability

6 of Jerky Treats prior to sale;

7           (c)     Failed to accompany Jerky Treats with adequate warning to consumers about

8 the dangers and adverse effects of Jerky Treats, including the risk of severe sickness and death in

9 dogs after consumption;

10           (d)     Failed to inquire about the safety and suitability of the Jerky Treats as to

11 PetSmart; and

12           (e)     By otherwise acting in a careless, negligent or reckless manner.

13     101.    Despite the fact that Defendants knew or should have known that the Jerky Treats

14 posed an unacceptable and unreasonable risk of harm to dogs, Defendants continued to market and

15 sell Jerky Treats to consumers.

16     102.    Defendants knew or should have known that the consumption of Jerky Treats by dogs

17 would result in foreseeable and reasonably avoidable property damage, including but not limited to

18 the potential harm, sickness or death of dogs owned by Plaintiff and members of the Class.

19     103.    Defendants' negligence proximately caused Plaintiff and the Class to be injured,

20 including exposing pets owned by Plaintiff and members of the Class to contaminants or hazardous

21 substances that led or could lead to sickness or death, increased risk of serious health problems, and

22 the associated costs of diagnostic screening, testing and veterinary treatment, among other losses.

23 **COUNT IV**

24 **Strict Liability – Defective Design or Manufacture**<br>**Against All Defendants**

25

26     104.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

27

28

1    105.    *Restatement Second of Torts* §402A, as adopted under California law, makes the

2  seller of any product in a defective or unreasonably dangerous condition subject to strict liability for

3  the harm caused to a consumer or to his property so long as the seller is engaged in the business of

4  selling such product.

5    106.    Defendants are the manufacturers, producers, distributors, marketers and/or sellers of

6  the Jerky Treats that Plaintiff and members of the Class purchased.

7    107.    Defendants marketed and sold Jerky Treats as healthy, wholesome, and safe dog

8  treats fit for consumption by dogs.

9    108.    The Jerky Treats were defective, unreasonably dangerous, and unsafe for their

10  ordinary and intended use because they caused injury, illness or death to Plaintiff's and Class

11  members' dogs.

12    109.    The Jerky Treats failed to perform in the manner reasonably expected, as an edible

13  product safe for consumption by dogs.

14    110.    As a direct and proximate cause of the unreasonably dangerous condition of the Jerky

15  Treats, Plaintiff and members of the Class sustained injuries, including, but not limited to: the

16  purchase price of Jerky Treats; the loss or sickness of their pets; increased risk of health problems in

17  their pets, including exposure to contaminants, ingredients or substances that cause illness or death

18  in dogs; the costs of diagnostic screening, testing and veterinarian treatment; and other economic

19  losses.

20                                   **COUNT V**

21                    **Strict Liability (Failure to Warn)**
                         **Against All Defendants**

22    111.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

23  forth herein.

24    112.    Plaintiff and others purchased dog treats which were manufactured, distributed or

25  sold by Defendants.

26    113.    As a result of cautionary warnings issued by the FDA beginning in 2007, and more

27  recently in 2011 and 2012, Defendants knew or should have known that their Jerky Treats were

28

1　defective and/or unreasonably dangerous for consumption by dogs at the time of manufacture and
2　distribution.

3　　　114.　Defendants' Jerky Treats products were under their exclusive control, and were sold
4　without adequate warnings on the products' packaging or in other any way reasonably calculated to
5　give fair warning to consumers of the health risks of the products.

6　　　115.　As a direct and proximate cause of Defendants' failure to warn of the health risks of
7　the Jerky Treats, Plaintiff and members of the Class sustained injuries, including, but not limited to:
8　the purchase price of Jerky Treats; the loss or sickness of their pets; increased risk of health
9　problems in their pets, including exposure to contaminants, ingredients or substances that cause
10　illness or death in dogs; the costs of diagnostic screening, testing and veterinarian treatment; and
11　other economic losses.

**COUNT VI**

**Violation of California's Unfair Competition Law,
California Business and Professions Code §17200, *et seq.*
Against All Defendants**

15　　　116.　Plaintiff repeats and realleges each and every allegation contained above as if fully set
16　forth herein.

17　　　117.　Section 17200 of the California Business and Professions Code ("Unfair Competition
18　Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Defendants
19　specifically violated §17200's prohibition against engaging in an ***unlawful*** act or practice by, *inter*
20　*alia*, marketing and selling Jerky Treats as safe, wholesome and high quality products that were
21　suitable for consumption by dogs when in fact Jerky Treats were harmful and hazardous, and could
22　cause serious sickness and death in dogs.

23　　　118.　Defendants' business acts and practices violated numerous provisions of California
24　law, including, *inter alia*, the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et*
25　*seq.*; California's False Advertising Law, Cal. Business and Professions Code §17500, *et seq.*; and
26　California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§1791.1(a), 1792, 1792.1, and
27　1791.1(b), as well as other violations of state law and common law. Plaintiff reserves the right to

28

1 | identify additional provisions of the law violated by Defendants as further investigation and
2 | discovery warrants.

3 |     119.    California Business and Professions Code §17200 also prohibits any "*fraudulent*
4 | *business act or practice*." By engaging in the above-described conduct, Defendants engaged in
5 | fraudulent business acts or practices that had a tendency and likelihood to deceive the public by
6 | marketing and selling Jerky Treats as safe, wholesome and high quality products that were suitable
7 | for consumption by dogs, when in fact Jerky Treats were harmful and hazardous and could cause
8 | serious sickness and death in dogs.

9 |     120.    Section 17200 also prohibits any "*unfair* . . . business act or practice." As described
10 | above, Defendants engaged in the unfair business practice of marketing and selling Jerky Treats as
11 | safe, wholesome and high quality products that were suitable for consumption by dogs, when in fact
12 | Jerky Treats were harmful and hazardous and could cause serious sickness and death in dogs.

13 |     121.    Defendants' business practices, as detailed above, are unethical, oppressive and
14 | unscrupulous, and they violate fundamental policies of this State. Further, any justifications for
15 | Defendants' wrongful conduct are outweighed by the adverse effects of such conduct. Thus,
16 | Defendants engaged in unfair business practices prohibited by California Business and Professions
17 | Code §17200, *et seq*.

18 |     122.    Section 17200 of the UCL further prohibits any "unfair, deceptive, untrue or
19 | misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive,
20 | untrue and misleading advertising in violation of §17200, in that Defendants' representations and
21 | advertising were likely to deceive the public as to the safety, quality, and suitability of Jerky Treats.

22 |     123.    Defendants' conduct caused and continues to cause substantial injury to Plaintiff and
23 | other members of the Class. Plaintiff has suffered injury in fact and lost money as a result of
24 | Defendants' unlawful, fraudulent and unfair conduct.

25 |     124.    Additionally, pursuant to California Business and Professions Code §17203, Plaintiff
26 | seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and
27 | fraudulent business practices and requiring Defendants to return the full amount of money
28 | improperly collected to all those who have paid them.

1

2 **COUNT VII**

**False and Misleading Advertising in Violation of**
3 **California Business and Professions Code §17500,** *et seq.*
**Against All Defendants**

4      125.    Plaintiff repeats and realleges each and every allegation contained above as if fully set
5 forth herein.

6      126.    California Business and Professions Code §17500, *et seq.* prohibits various deceptive
7 practices in connection with the dissemination in any manner of representations which are likely to
8 deceive members of the public to purchase products such as Jerky Treats that were marketed and
9 sold by Defendants.

10      127.    Defendants' acts and practices as described herein have deceived and/or are likely to
11 deceive Plaintiff and Class members. Using the internet, their websites, traditional means of
12 advertising and promotions, as well as the packaging of the Jerky Treats themselves, Defendants
13 marketed and promoted Jerky Treats as safe, wholesome and high quality products that were suitable
14 for consumption by dogs, when in fact Jerky Treats were harmful and hazardous and could cause
15 serious sickness and death in dogs. Defendants' representations were likely to deceive consumers.

16      128.    By their actions, Defendants have been and are disseminating uniform advertising
17 concerning Jerky Treats, which by its nature is unfair, deceptive, untrue, or misleading within the
18 meaning of California Business and Professions Code §17500, *et seq.* Such advertisements are
19 likely to deceive, and continue to deceive, the public for the reasons detailed above.

20      129.    Defendants intended Plaintiff and Class members to rely upon the advertisements and
21 numerous material misrepresentations as set forth more fully elsewhere in the Complaint. In fact,
22 Plaintiff and members of the Class relied upon the advertisements and misrepresentations to their
23 detriment and suffered harm as a result.

24      130.    The above-described false, misleading, deceptive advertising Defendants
25 disseminated continues to have a likelihood to deceive in that Defendants have failed to disclose the
26 true and actual dangers associated with Jerky Treats. Defendants have failed to instigate a public
27 information campaign to alert consumers of these limitations, which continues to create a false and
28 misleading perception of the safety and quality of Jerky Treats.

## COUNT VIII

### Violations of California Consumers Legal Remedies Act,
### California Civil Code §1750, *et seq.*
### Against All Defendants

131.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

132.   The California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.* (the "Act"), protects consumers against fraud, unlawful practices, and unconscionable commercial practices in connection with the sale of any merchandise. Plaintiff is a consumer as defined by California Civil Code §1761(d). Jerky Treats are goods within the meaning of the Act.

133.   As described above, Defendants sold and falsely marketed Jerky Treats as safe, wholesome and high quality products that were suitable for consumption by dogs, when in fact Jerky Treats were harmful and hazardous and could cause serious sickness and death in dogs.

134.   Defendants therefore violated and continue to violate, the Act by engaging in the following practices proscribed by California Civil Code §1770(a), which were intended to result in, and did result in, the sale of Jerky Treats to Plaintiff and members of the Class:

(5) Representing that [Jerky Treats have] . . . characteristics . . . uses [or] benefits . . . which they do not have . . . .

(7) Representing that [Jerky Treats] are of a particular standard, quality or grade . . . if they are of another.

(9) Advertising goods . . . with intent not to sell them as advertised.

(16) Representing that [Jerky Treats have] been supplied in accordance with a previous representation when [they have] not.

135.   Plaintiff and other members of the Class reasonably relied upon Defendants' representations concerning the safety, suitability and wholesomeness of Jerky Treats, when instead they were harmful and hazardous when consumed by dogs and could serious sickness and death in dogs.

136.   By reason of the foregoing, Plaintiff and the Class haven been irreparably harmed, entitling them to injunctive relief, disgorgement and restitution.

1    137.    Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail

2    of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems

3    associated with the actions detailed above and give notice to all affected consumers of its intent to so

4    act. Plaintiff sent these notices by certified mail, return receipt requested, to Defendants' respective

5    principal place of business.

6    138.    If Defendants fail to adequately respond to Plaintiff's demand within 30 days of the

7    letter pursuant to §1782 of the Act, Plaintiff will amend this claim to add additional claims for relief,

8    including claims for compensatory and exemplary damages. Plaintiff is already entitled to the relief

9    set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

10                                            **COUNT IX**

11              **Violation of the Song-Beverly Warranty Act of Breach of Implied Warranty of**
              **Merchantability, Cal. Civ. Code §§1792.1 and 1791.1(b)**
12                                       **Against All Defendants**

13    139.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

14    forth herein.

15    140.    Defendants impliedly warranted to Plaintiff and Class members who purchased Jerky

16    Treats that the treats were fit for the particular purpose of consumption by dogs.

17    141.    Plaintiff and other Class members relied on the Defendants, as manufacturers,

18    producers, distributors, marketers and/or sellers of Jerky Treats, to produce and/or sell dog treats that

19    were safe for consumption.

20    142.    Defendants knew or should have known that their Jerky Treats products would be

21    relied on by Plaintiff and Class members as dog treats suitable for consumption by dogs, and were

22    being purchased by consumers as goods suitable for that purpose.

23    143.    Because Jerky Treats were not fit for consumption, and in fact contained

24    contaminants or substances that caused illness or death in dogs, Defendants breached the implied

25    warranty of fitness within the meaning of Cal. Civ. Code §§1791.1(b) and 1792.1.

26    144.    As a proximate result of Defendants' breach of the implied warranty of

27    merchantability, Plaintiff and other Class members sustained damages.

28

1    145.    Pursuant to Cal. Civ. Code §§1791.1(d) and 1794(a), (b)(2), Plaintiff and the Class

2    are entitled to damages and other legal and equitable relief including, at their election, the right of

3    reimbursement.

## COUNT X

### Unjust Enrichment
### Against All Defendants

146.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

147.    At all times relevant hereto, Defendants designed, manufactured, produced, marketed

and/or sold Jerky Treats that were hazardous, unsafe and unsuitable for consumption by dogs, and

could lead to severe sickness and death in dogs.

148.    Plaintiff and members of the Class conferred upon Defendants, without knowledge of

the Jerky Treats' defects and hazards, payment for such products, benefits that were non-gratuitous.

Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of

the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable

wrongdoing, Plaintiffs and members of the Class were not receiving products of the high quality,

nature, fitness or value that had been represented by Defendants and reasonable consumers would

have expected.

149.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and

members of the Class under these circumstances made Defendants' retention of the non-gratuitous

benefits unjust and inequitable. Because Defendants' retention of the non-gratuitous benefits

conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of

the Class are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful

profits, revenue, and benefits in a manner established by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for

relief and judgment against Defendants as follows:

1    A.    Certifying this class action pursuant to Rule 23 of the Federal Rules of Civil

2 Procedure on behalf of the proposed Class described herein and designating Plaintiff's Counsel,

3 Robbins Geller Rudman & Dowd LLP, as Lead Counsel for the Class;

4    B.    Awarding declaratory and injunctive relief as permitted by law or equity pursuant to

5 Rules 64 and 65 to assure that the Class has an effective remedy, including enjoining Defendants

6 from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with

7 Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies

8 acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

9    C.    Awarding a declaratory judgment with damages awarded as supplemental relief;

10    D.    Awarding costs of diagnostic screening and the costs of appropriate veterinarian

11 treatment for pets owned by members of the Class that have consumed or been exposed to Jerky

12 Treats;

13    E.    Awarding reimbursement to Plaintiff and Class members for the amounts they paid

14 for Jerky Treats;

15    F.    Awarding compensatory and punitive damages, including actual and statutory

16 damages, arising from Defendants' wrongful and illegal conduct;

17    G.    Awarding all costs, including reasonable attorneys' fees, experts' fees, and all other

18 costs and expenses incurred in the course of prosecuting this action;

19    H.    Awarding pre-judgment and post-judgment interest at the legal rate; and

20    I.    Awarding such other and further relief as the Court deems just and proper.

21                      **JURY DEMAND**

22 Plaintiff hereby demands a trial by jury.

23 DATED: December 20, 2012        ROBBINS GELLER RUDMAN
                                      & DOWD LLP

24                              JOHN J. STOIA, JR.
                              RACHEL L. JENSEN

25                              PHONG L. TRAN

26

27                                              RACHEL L. JENSEN

28

1

2 655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
3 619/231-7423 (fax)

4 ROBBINS GELLER RUDMAN
  & DOWD LLP
5 SAMUEL H. RUDMAN
MARK S. REICH
6 58 South Service Road, Suite 200
Melville, NY 11747
7 Telephone: 631/367-7100
631/367-1173 (fax)

8
ROBBINS GELLER RUDMAN
9  & DOWD LLP
AMANDA M. FRAME
10 Post Montgomery Center
One Montgomery Street, Suite 1800
11 San Francisco, CA 94104
Telephone: 415/288-4545
12 415/288-4534 (fax)

13 Attorneys for Plaintiff

14 S:\CptDraft\Consumer\Cpt Nestle Purina_V2.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY, VIOLATIONS
OF CAL. BUS. & PROF. CODE §§17200 AND 17500, CAL. CIVIL CODE §1750, *ET SEQ.* - 28 -